**UNITED STATES of America,
Appellee,**

v.

**Elmer Wilson WALKER, Appellant.**

**No. 9710.**

United States Court of Appeals
Fourth Circuit.

Argued March 1, 1965.

Decided May 25, 1965.

Haynsworth, Chief Judge, dissented.

Albert R. Turnbull, Norfolk, Va. (Court-assigned counsel) [Fine, Fine,

Legum, Schwan & Fine, Norfolk, Va., on brief], for appellant.

Harold Gavaris, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

The ultimate sentence pronounced by the District Court on his conviction, Elmer Wilson Walker tells us, is invalid under the Fifth Amendment because it punishes him twice for the same offense, in that it increases the term of his original sentence. United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Ex parte Lange, 18 Wall. 163, 168, 85 U.S. 163, 168, 21 L.Ed. 872 (1873); King v. United States, 69 App. D.C. 10, 98 F.2d 291, 296 (1938). We agree.

The hardship—and the District Court earnestly strove to avoid it—came about in the application of 18 U.S.C. § 4208(b), which allows a trial court to obtain the recommendation of the Bureau of Prisons of an advisable disposition of a criminal case after conviction. Walker had committed, on a Government reservation within Virginia, what would have been a felony under the State law—the passing of a bad check for $50. §§ 6–129 and 18.1–100, Code of Va. 1950. By virtue of the Assimilative Crimes Act, 18 U.S.C. § 13, he had thus perpetrated a Federal felony.

On his plea of guilty, the District Court placed him in the Attorney General's custody for study and advice under § 4208(b). This statute automatically imposes during the period of the reference a tentative sentence for the maximum term of imprisonment permissible —here 5 years. A chronology of the steps leading to Walker's present incarceration follows:

July 10, 1962—tentative statutory sentence of 5 years (*with defendant present*) under 18 U.S.C. § 4208(b);

October 31, 1962—*final* sentence passed (*in absence of defendant*), after

report from Bureau of Prisons; tentative sentence reduced to 3 years, with service of 6 months required but retroactive to July 10, 1962, and with suspension of remainder of term under conditions of probation;

December 10, 1962—release upon expiration of 6 months imprisonment and probation begun;

March 1963—probation violated;

April 23, 1963—probation revoked for violation; suspension terminated and commitment for service of remainder of sentence (2½ years);

April 18, 1964—letter from Walker to the District Judge, treated as a motion, referring to United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963) which held it error to pass final sentence under § 4208(b) in absentia, and asking that he be returned for resentencing because of error in final sentence of 3 years on October 31, 1962 due to his absence when sentenced;

June 15, 1964—with Walker present, after explanation to him by the Court of the risk of his request to be re-sentenced, both the sentence passed on October 31, 1962 and the commitment for probation violation entered on April 23, 1963 were vacated;

June 15, 1964—imposition of any sentence whatever suspended, and Walker placed on probation for 5 years;

October 2, 1964—for violation of last probation, suspension terminated and a sentence of 5 years imprisonment imposed, with credit for all time served and good conduct deductions.

He now appeals the 5-year sentence.

Walker's motive in asking for the resentence was to have his maximum confinement established beyond peradventure. In United States v. Behrens, supra, 375 U.S. 162, 84 S.Ct. 295, it was held, to repeat, that a sentence passed upon consideration of the report made pursuant to § 4208(b) was erroneous if the defendant was not in court. He was justifiably apprehensive of the jeopardy of an undelimited imprisonment which might be the result if Behrens were thought ex proprio vigore to annul the sentence. His venture might well be termed a quia timet motion. Technically, it fits into Rule 35, F.R.Crim.P. allowing the Court to correct an illegal sentence.

His testimony on the day the 3-year sentence was rescinded graphically depicts his dilemma:

"My basic reason for this, Your Honor, was just to get it squared away. I mean I come with no hopes of maybe being released, or this or that. I wanted to get it squared away so I'll hear no more from it, if ever possible. Of course, you always have a hope, but the thing was —I am almost certain that I am— like I say, I was going to make parole, and I think I will after I get back up there, if I go back, or whatever happens to me, and this is what —I'm scared I'm going to hurt if I ask you to vacate it, and if not, I don't know what to do, but the thing is, *I want the thing basically legalized,* or whatever it is that was wrong with it. That was my intention." (Accent added.)

The contention of Walker is that his detention should be limited to the *final* sentence of 3 years fixed by the Court on October 31, 1962, after receipt of the report from the Bureau of Prisons. While he questioned the sentence in his letter-motion of April 18, 1964, he stresses that he never charged it was void. His argument is that it was merely erroneous and he asked only for resentencing. Correction of the error, he maintains, could not justify, either immediately or conditionally, an incarceration for more than the 3 years of the October 31, 1962 sentence.

On the other hand, the United States asserts that the 3-year sentence was of no effect at all because of Walker's absence when it was handed down, and consequently the District Court had the power, right and duty to reassume jurisdiction. This the Court did, the Govern-

**430**

ment continues, on June 15, 1964 when it suspended all sentence and put Walker on probation for 5 years. With forfeiture of probation, the current sentence of 5 years logically followed, the Government further points out. We think this syllogism is unsound in the present circumstances.

The 3-year sentence was not a nullity, for the Court indisputably had jurisdiction to pass it and it was within the authorized limits of punishment. Murphy v. Com. of Massachusetts, 177 U.S. 155, 159, 20 S.Ct. 639, 44 L.Ed. 711 (1900). Moreover, the defendant did not ask for its vacation—but rather for its confirmation—and so he waived his objection of absence. For these reasons the precedents cited by the United States to uphold the sentence of 5 years do not govern here, for in each of them the sentence was attacked as void. E. g., Bozza v. United States, 330 U.S. 160, 166, 67 S.Ct. 645, 91 L.Ed. 818 (1947); Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Miller v. Aderhold, 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702 (1933).

Of course, the imposition of the sentence reo absente was deficient in due process procedurally. The defect gave ample ground at defendant's instance for reversal or vitiation of the judgment of sentence—but not the conviction—by appeal or on habeas corpus. Nevertheless until adjudged invalid, to repeat, the sentence stood, subsistent and altogether effective. Cf. Murphy v. Com. of Massachusetts, supra, 177 U.S. 155, 159, 20 S.Ct. 639.

Furthermore, it was not alterable by the prosecution save to reduce or correct it as illegal under Rule 35 F.R.Crim.P., for the Government could not appeal or by any other process augment it. United States v. Benz, supra, 282 U.S. 304, 307, 51 S.Ct. 113 (1931). Its integrity was unimpeachable except by the defendant. Ex parte Lange, supra, 85 U.S. 163, 176. He chose to approve the rendition of judgment in absentia and to abide by it. Surely this was his right, just as an accused may consent that his trial proceed without his presence. Glouser v. United States, 296 F.2d 853, 855 (8 Cir. 1961), cert. den. 365 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789; Parker v. United States, 184 F.2d 488, 489 (4 Cir. 1950).

Quite aside, however, from the procedural bar, the circumstances of the imposition of the 5-year probationary sentence disclose a paramount substantive reason why it cannot supplant the prior 3-year sentence, even if Walker be considered as asking to vacate the former sentence. On that occasion the Court informed him in advance that his request to have his sentence "legalized" could be granted only if he moved to vacate it. No reason is evident why certitude in his punishment could not be established through a mere reaffirmation of that sentence with appropriate deductions for time served. However, the import of the Court's ruling was to condition his Constitutional right to seek correction upon the risk of another sentence, then unforeseeable in nature and extent. Thus, though not so intending, the Court potentially penalized him for asserting the privilege. This the law forbids, procedural logic notwithstanding. Green v. United States, 355 U.S. 184, 191 et seq., 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). There the Court, p. 192, 78 S.Ct. p. 226, approvingly quotes this observation of Justice Holmes dissenting in Kepner v. United States, 195 U.S. 100, 135, 24 S.Ct. 797, 49 L.Ed. 114 (1904):

> "Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States."

See, too, Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (April 27, 1965).

Whether the substitute was initially more or less rigorous than its predecessor may be debatable, but the point is that Walker was exposed to the possibility of a heavier sentence in an endeavor to validate the prior one. The actual outcome of the proceeding starkly and

baldly demonstrates the ultimate injustice: he entered prison with a 3-year sentence but wound up with a 5-year commitment for the same offense and on the original single plea of guilty.

In reality, whatever his words to the Court, Walker obviously did not desire to chance a greater term. If in law his wish "to vacate" embraced that unnatural decision, he should not be held to it. Nor should acceptance of the new judgment estop Walker's subsequent attack upon it. In neither aspect was it a free waiver of his right to a corrected sentence—he had little option after advised by the Court that a motion to vacate was his sole remedy. Cf. Green v. United States, supra, 355 U.S. 184, 193, 78 S.Ct. 221.

Even the concern of the District Judge for Walker's protection cannot excuse the substitute judgment from condemnation. It was, in sum, the product of a procedure which could prove either deterring or punitive of an insistence on Constitutional privileges. See Van Alstyne, In Gideon's Wake; Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (March 1965).

Hence, no orders entered after October 31, 1962 could enlarge Walker's detention beyond a total of 3 years. Incidentally, too, as that judgment fixed a definite term of confinement and suspended its execution, rather than suspending the imposition of any sentence whatever, upon the revocation of the suspension no greater immurement of Walker could be justified under the Federal probation statute. Roberts v. United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943).

As the vacatur of the October 31, 1962 sentence—3 years—is not sustainable, the probationary judgment of June 15, 1964 was ineffective and the order committing Walker for a period of 5 years on October 2, 1964 must be set aside. Walker may be held only to answer for the term computable under the October 31, 1962 judgment as enforced by the revocation order of April 23, 1963. The case will be remanded to the District Court to effectuate this decision.

The District Judge specifically directed that the appellant be evaluated psychiatrically by the prison authorities and, if found in need of it, be given advisable psychiatric treatment. We will ask the District Judge to inquire what has been done in response to his directions and enter such orders on his findings as he deems proper.

Reversed and remanded.

HAYNSWORTH, Chief Judge (dissenting).

It is true, of course, that the sentence of October 31, 1962 was not void. Because it was imposed in the defendant's absence, it was vulnerable to collateral attack, but, as the majority clearly state, the defendant could have affirmed it and avoided all risk of having to serve more than the three-year sentence then imposed upon him. Positive affirmation was not even requisite. To be secure in the protection of the sentence, he had only to refrain from attacking it.

Walker, however, chose to attack the sentence. He sought its vacation.*

---

\* I think the record shows that Walker sought a vacation of the sentence rather than its affirmation, which the majority opinion states.

Originally, Walker wrote asking that he "be returned to Your Honor's Court for the purpose of being resentenced." In the context of Behrens and Walker's later verbal explanation of his motive, the request may have been equivocal, but certainly not inconsistent with a motion to vacate. The District Judge thought that the appropriate relief, and at the hearing he went to considerable pains to make certain that Walker did want the judgments vacated, and that he fully understood the risk he ran. The Judge asked Walker, " * * * Now, do I understand that you wish to formally move to vacate the sentence that was imposed by Judge Hutcheson on October 31, 1962? If that is so, then, of course,

Clearly he hoped that the new sentence would be for a shorter term or would be suspended in whole or in part, but he was told, and clearly he understood, that if the sentence of October 31, 1962 was vacated, a sentence for a longer term might be imposed upon him.

Actually, Walker got exactly what he sought. The 1962 sentence was vacated, imposition of sentence was suspended, and he was placed on probation for five years. The result was his immediate release from prison, and Walker walked out of the courtroom a happy and grateful man. His gratitude soured only later when, because of a probation violation, a five-year sentence, with appropriate credits, was imposed upon him, that being within the period during which he would have been under supervision if he had not violated the terms of his probation.

When the sentence of October 31, 1962 was vacated on Walker's motion, it was vacated for all purposes. The case then stood as if Walker had never been sentenced. He stood then before the court convicted, with all of the rights to be present and of allocution that every defendant has when the sentence is imposed immediately after his conviction. The court was as free to impose any sentence authorized by law which then appeared appropriate in light of all of the facts then known to the court as if no earlier sentence had ever been imposed upon him.

This situation, in my view, is indistinguishable from a sentence imposed upon a defendant after a new trial which he has sought and obtained. When a sentence is imposed upon a defendant following a first trial, the Government may not attack it, but the defendant can. If he chooses to do so and succeeds in obtaining a retrial, he suffers no detriment from the sentence imposed after the first trial, and is entitled to no benefit from it. If his second trial results in a conviction, any lawful sentence may be imposed upon him without regard to the sentence passed after the abortive first trial.

In that situation, of course, a heavier sentence ought not to be imposed upon a defendant because he sought vindication of his legal rights and succeeded in obtaining an order for a new trial. Judicial vindictiveness for resort to judicial processes is morally wrong, but the judge who presides at a second trial has the power and the duty to impose any sentence authorized by law, which, in light of all the facts and circumstances then known

---

I would also have to vacate the sentence that I imposed upon you on April 23, 1963. Is that your desire?"

The judge then proceeded to explain to Walker that, if he moved to vacate the sentences and if they were vacated, the slate would be clean and that he ran the risk that the sentence which would then be imposed would be heavier than the one originally imposed upon him. At the conclusion of the colloquy during which Walker stated that he recognized the risk which he ran, he stated, "Yes, sir. Well, then I'd like to go ahead and vacate it and have Your Honor complete it, or whatever is necessary."

Judge Hoffman's order, itself, recites, "[T]he defendant having moved the Court to vacate the orders * * *," and its operative provision is that the orders be "vacated on motion of the defendant * * *."

It is true that Walker's explanation of his motive at one point might justify an inference that his wish was an af-firmation or reimposition of the earlier sentence. It is the kind of deferential explanation which might be expected of one attacking an earlier order of the Court. It does not indicate to me any effort to restrict the Court's discretion, however, for it, itself, contains references to possible lighter sentences and his recognition of the risk of a heavier one. It cannot wipe from the slate his unequivocal statement that he wished to vacate the sentences and his ready acceptance of the Court's order vacating the Court's earlier sentences and reciting that it did so upon Walker's motion.

Furthermore, I cannot construe the Court's searching inquiry as to Walker's wish to vacate the sentence as a representation that it was the only or an appropriate means of affirmation of the earlier sentence. Implicit in the whole colloquy was the alternative that Walker do nothing, in which event the earlier sentence would stand validated.

to him, other than the defendant's litigiousness, seems most appropriate and just.

Here, there was no suggestion of a visitation of a penalty upon Walker for having sought a vacation of his first sentence. Though it ultimately resulted in a sentence for a longer term, that was consequent only upon a violation of his probation. Originally, Walker got exactly what he wanted, release from prison. As it then seemed to him and to the judge, he was rewarded for having moved to vacate his sentence, not penalized.

For these reasons, I respectfully dissent.