Eddie W. **PATTON**, Appellee,

v.

**STATE OF NORTH CAROLINA,**
**Appellant.**

**No. 11005.**

United States Court of Appeals
Fourth Circuit.

Argued Feb. 6, 1967.

Decided June 14, 1967.

Theodore C. Brown, Jr., Staff Atty., Office of Atty. Gen. of North Carolina (T. Wade Bruton, Atty. Gen. of North Carolina, on brief), for appellant.

William W. Van Alstyne, Durham, N. C. (Court-assigned counsel), for appellee.

Before SOBELOFF, J. SPENCER BELL * and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

The question raised by this appeal is whether a defendant may be sentenced to a longer term of imprisonment at his second trial than he received after his first conviction, vacated on constitutional grounds.

Unrepresented by counsel, the petitioner, Eddie W. Patton, was tried in October, 1960 and convicted of armed robbery after a plea of nolo contendere, entered at the close of the State's evi-

* Judge Bell participated in the hearing and concurred in the disposition of the case but died before the opinion was prepared.

dence. He was sentenced to prison for a term of twenty years. No appeal was taken, but in April 1964, Patton applied for a state post-conviction hearing, and on the basis of the Supreme Court's landmark decision in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), was awarded a new trial.

Patton remained in custody, and on February 17, 1965, after tendering a plea of not guilty, he was again convicted by jury on the original indictment. This time he had the assistance of counsel, who called the court's attention to the fact that the defendant had been continuously imprisoned from June 10, 1960 and had already served nearly five years for the offense. Although the trial judge paid lip service to the idea of crediting Patton with that portion of the initial twenty-year sentence already served, he actually increased Patton's punishment by imposing, in effect, a twenty-*five*-year sentence and then deducting five years for the time served.[1] Thus, as a result of seeking and obtaining a new trial, the prisoner, who originally would have been eligible for parole in October 1965, now, it is agreed, will not become eligible until February 1970.

Regardless of whether the action of the sentencing judge is verbalized as a twenty-year sentence without credit for the five years already served, or as a twenty-five-year sentence with credit, the practical effect of the second judge's sentence is to compel the defendant to serve five years longer to become eligible for parole, than he would have been required to serve had he not asserted his constitutional right to a fair trial.

Patton applied in August 1965 to the District Court for a writ of habeas corpus, contending that a harsher sentence following a second conviction for the same offense, after the initial conviction has been vacated on constitutional grounds, is a denial of due process of law; is inconsistent with the prohibition against double jeopardy; and is a denial of equal protection of the law. The District Court held Patton's sentence unconstitutional on the ground that the increased punishment violated the due process and equal protection clauses of the Fourteenth Amendment. Patton v. North Carolina, 256 F.Supp. 225 (W.D. N.C.1966).

## I.  Exhaustion of State Remedies

The State has misconceived the import of Patton's arguments. It interprets his contention to be that the second trial judge, in imposing a more severe sentence, was motivated by prejudice because of the defendant's successful attack on the initial conviction. The State's position on this appeal is that such an allegation has never been presented to the state courts, and it reasons that Patton having failed to exhaust available state remedies or to show that circumstances existed rendering the state process ineffective to protect his rights, the District Court lacked jurisdiction under 28 U.S.C. § 2254. The District Judge carefully reviewed the relevant North Carolina cases, however, and concluded that the effect of the opinions of the state supreme court is to hold that a defendant is not entitled to credit for time served and may receive an increased sentence (unless the subsequent sentence plus the time already served under the invalid first sentence should exceed the statutory maximum).[2] We share the District Court's view that since further re-

---

1. "THE COURT: Before I announce punishment, I will take into consideration the fact that he has served four years, or nearly five years.

    *     *     *     *     *

    "THE COURT: * * * I would give you five more years than what I am giving you, but I am allowing you credit for the time that you have served. Judgment of the Court is that the De-

fendant be imprisoned in the State's Prison for a term of twenty years * * *."

2. State v. Weaver, 264 N.C. 681, 142 S.E. 2d 633 (1965); State v. Slade, 264 N.C. 70, 140 S.E.2d 723 (1965); State v. Anderson, 262 N.C. 491, 137 S.E.2d 823 (1964); State v. White, 262 N.C. 52, 136 S.E.2d 205 (1964); State v. Williams, 261 N.C. 172, 134 S.E.2d 163 (1964).

sort to the North Carolina courts would be futile, it is not required.[3]

## II. *Due Process*

The simplistic rationale traditionally offered for denying credit and permitting a harsher sentence at a second trial is that the prisoner, by successfully attacking his initial conviction, has "voided" or "wiped out" all consequences of that conviction—including the sentence imposed by the first judge and any time served under that sentence.[4] In State v. White, 262 N.C. 52, 136 S.E.2d 205 (1964), the North Carolina Supreme Court stated that a defendant

"is not entitled as a matter of law to credit against the second sentence for time served under the original sentence. The rationale of the decisions seems to be that the defendant in seeking and obtaining a new trial *must be deemed to have consented to a wiping out of all the consequences of the first trial.*" [5]

262 N.C. at 56, 136 S.E.2d at 208 (Emphasis supplied.)

The principle of fair dealing which impels judges in passing sentence to take into account the time a defendant was deprived of his liberty while awaiting trial, Dunn v. United States, 376 F.2d 191 (4th Cir. Feb. 24, 1967), insists even more inexorably that he shall not be finessed out of credit for time he was forced to serve under an invalid sentence. The trial and conviction may be voided

---

3. Our conclusion is strengthened by the recent decision in State v. Pearce, 268 N.C. 707, 151 S.E.2d 571 (1966), decided since the District Court's action. In that case, the defendant's sentence was increased following his second conviction, even though "[t]he evidence on the new trial was not essentially different" from that adduced at the original trial. In his appeal to the state supreme court, the defendant relied on Judge Craven's opinion here under review, to support his argument that any increase in the punishment imposed after a second conviction was in effect a penalty for seeking review of an invalid conviction, and a violation of his constitutional rights. The Supreme Court of North Carolina, however, declined to follow that opinion, stating flatly that "[w]e adhere to our former decisions." Id. at 708, 151 S.E.2d at 572.

4. Plainly, the trial court regarded Patton's successful attack on his original unconstitutional conviction as a waiver of the benefit of nearly five years' imprisonment.
   "THE COURT: Are you referring about the prior sentence that was imposed on you?
   DEFENDANT: Yes, Sir.
   THE COURT: That was wiped off.
   DEFENDANT: Yes, I understand that.
   THE COURT: Mr. Patton, as your motion, because you moved that it be— and alleged and the Court found that your constitutional rights had been violated upon your motion, and that was all done away with. We are now confronted with a new day."

5. It is noteworthy, however, that the North Carolina Supreme Court has, on occasion boggled at this Draconian doctrine. In State v. Weaver, 264 N.C. 681, 142 S.E.2d 633 (1965), the court quoted with approval from an opinion by the Massachusetts Supreme Court, Lewis v. Commonwealth, 329 Mass. 445, 108 N.E. 2d 922, 35 A.L.R.2d 1277 (1952), as follows:

   "It is hardly realistic to say that nine months in the State prison amount to nothing—that since the petitioner 'should not have been imprisoned as he was, he was not imprisoned at all.' [Citation omitted.] Moreover, * * * the time served before the reversal of the sentence might in some other case be so long that glaring and intolerable injustice would result if the time served on a first sentence should not be taken into account in imposing a second sentence. It is not even technically correct to say that the first sentence must now be deemed to have been a nullity. It was not a nullity when it was imposed or *while it was being served.*"

   Id. at 685, 142 S.E.2d at 636. (Emphasis supplied by North Carolina Supreme Court.) The North Carolina court added that "[t]he hard fact of his [Weaver's] actual service of sentence * * * cannot be ignored." Id. at 686, 142 S.E.2d at 637. *Weaver*, however, was a case in which the second sentence imposed on the defendant was the maximum allowable under the statute, so that added to the time already served under the invalid first sentence, the punishment exceeded the statutory maximum.

on appeal, but the time illegally exacted by the unconstitutional sentence is an irreversible fact. It is grossly unfair for society to take five years of a man's life and then say, we now acknowledge that this should not have happened, but we will set everything right by refusing to recognize that it did happen. This is an unworthy pretense. Courts should not be astute to fashion legal fictions to attain unjust ends.[6]

The risk of a denial of credit or the risk of a greater sentence, or both, on retrial may prevent defendants who have been unconstitutionally convicted from attempting to seek redress.[7] For this reason, the District Court declared that predicating Patton's constitutional right to petition for a fair trial on the fiction

that he has consented to a possibly harsher punishment, offends the due process clause of the Fourteenth Amendment.[7a] It would confront the prisoner with the unhappy choice of either abandoning his constitutional right to a fair trial and serving out his prison term under the invalid sentence, or exercising that right under the hazard, in the event of a second conviction, of being treated as though the years of imprisonment already served had never occurred.[8]

This is like the "grisly choice" discountenanced in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). "The law should not, and in our judgment does not, place the defendant in such an incredible dilemma." Green v. United States, 355 U.S. 184, 78 S.Ct. 221,

---

**6.** Judge Edgerton, in King v. United States, 98 F.2d 291 (D.C.Cir.1938) characterized as "in the vein of The Mikado" the government's arguments that because the initial sentence was void, an accused "has served no sentence but has merely spent time in the penitentiary," and, that since the defendant "should not have been imprisoned as he was, he was not imprisoned at all." He facetiously suggested as logical corollaries to such arguments that the accused should also be "liable in quasi-contract for the value of his board and lodging, and criminally liable for obtaining them by false pretenses." Id. at 293–94.

**7.** Judge Craven himself has received a letter which vividly illustrates a prisoner's fear of obtaining an increased sentence following a new trial:

"Dear Sir:

I am in the Mecklenburg County jail. Mr. _____ chose to re-try me as I knew he would.

\*　　\*　　\*　　\*　　\*

Sir the other defendant in this case was set free after serving 15 months of his sentence, I have served 34 months and now I am to be tried again and with all probility I will receive a heavier sentence then before as you know sir my sentence at the first trile was 20 to 30 years. I know it is usuelly the courts prosedure to give a larger sentence when a new trile is granted I guess this is to discourage Petitioners.

Your Honor, I don't want a new trile I am afraid of more time \* \* \*.

Your Honor, I know you have tried to help me and God knows I apreceate this but please sir don't let the state re-try me if there is any way you can prevent it.

Very truly yours"

256 F.Supp. at 231 n. 7. (Italics omitted.)

**7a.** Cf. State v. Wolf, 46 N.J. 301, 306, 216 A.2d 586, 590–591 (1966). There the defendant, convicted of first-degree murder with a jury recommendation of life imprisonment, succeeded in obtaining a reversal on the basis of certain errors (non-constitutional in nature) committed at the trial. In holding that the State was barred on retrial from again seeking the death penalty, the Supreme Court of New Jersey found it unnecessary to decide whether the double jeopardy clause of either the federal or the state constitution, or the due process clause of the Fourteenth Amendment was applicable. The unanimous decision was based instead on certain "procedural policies" which were "of the essence of the administration of criminal justice."

**8.** That this is a very real risk and not merely hypothetical is indicated by an informal survey conducted by the Duke Law Journal which revealed that in 72% of the retrials occasioned by the denial of counsel at the first trial, credit for time already served was effectively denied. Note, Increased Sentence and Denial of Credit on Retrial Sustained Under Traditional Waiver Theory, 1965 Duke, L.J. 395, 399 n. 25.

2 L.Ed.2d 199 (1957).[9] North Carolina deprives the accused of the constitutional right to a fair trial, then dares him to assert his right by threatening him with the risk of a longer sentence. It may not exact this price. Enjoyment of a benefit or protection provided by law cannot be conditioned upon the "waiver" of a constitutional right.[10]

Indeed, this circuit has already held it impermissible to force upon an accused the risk of more severe punishment as a condition for securing a constitutional right. In United States v. Walker, 346 F.2d 428 (4th Cir. 1965), the defendant was initially sentenced in his absence. When he successfully attacked the sentence on this ground, he was resentenced to a longer term. Judge Bryan, speaking for the court criticized the trial judge's disregard of the original sentence:

> "[T]he import of the [District] Court's ruling was to condition his Constitutional right to seek correction upon the risk of another sentence, then

unforeseeable in nature and extent. Thus, though not so intending, the Court potentially penalized him for asserting the privilege. This the law forbids * * *. [Citing Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 184 (1957).]

> \* \* \* \* \* \*

> It [the second, harsher sentence] was, in sum, the product of a procedure which could prove either deterring or punitive of an insistence on Constitutional privileges." [11]

346 F.2d at 430–431.

The District Court held that Patton's punishment could not be increased unless evidence justifying a harsher sentence appeared in the record, and that the State must bear the burden of showing that such facts were introduced at the second trial, since "where the record disclose[d] no colorable reason for harsher punishment," the effect would be to inhibit the constitutional right to seek a

---

9. In *Green*, it was argued that the defendant had "waived" the benefit of his first trial, in which he escaped conviction for a higher offense, as a condition for appealing his conviction of the lesser one. See United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 859 (2d Cir. 1965), where an analogous argument was rejected with the observation that it "ignore[s] the elementary psychological realities" and presumes "a barter theory of fairness"; and United States v. Walker, 346 F.2d 428 (4th Cir. 1965), declaring that a defendant's motion to vacate his defective sentence could not be considered a waiver.

"In reality, whatever his words to the Court, Walker obviously did not desire to chance a greater term. If in law his wish 'to vacate' embraced that unnatural decision, he should not be held to it."
346 F.2d at 431.

The Supreme Court has on numerous occasions articulated its concern that access to post-conviction remedies be unfettered. See, e.g., Fay v. Noia, supra; Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Green v. United States, supra; Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956);

Cichos v. State of Indiana, 385 U.S. 1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (Nov. 14, 1966) (Fortas, J., dissenting); United States v. Ewell, 383 U.S. 116, 126, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) (Fortas, J., dissenting).

10. See, e.g., Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Frost & Frost Trucking Co. v. Railroad Comm'n, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926). See also Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965); Note, Unconstitutional Conditions, 73 Harv.L. Rev. 1595 (1960).

11. "Denying a benefit because of the exercise of a right in effect penalizes that exercise, making it tantamount to a crime. Punishing constitutionally protected activities seems clearly a violation of substantive due process."
Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595, 1599–1600 (1960).

new trial.[12] 256 F.Supp. at 236. We agree with the District Court that it is an impossible task for the prisoner to prove improper motivation of the trial judge. It is equally impossible, and most distasteful, for federal courts to pry into the sentencing judge's motivation to ascertain whether vindictiveness played a part.

We do not think, however, that a defendant's rights are adequately protected even if a second sentencing judge is restricted to increasing sentence only on the basis of new evidence. We are in accord with the First Circuit, which has recently held that a sentence may not be increased following a successful appeal, even where *additional* testimony has been introduced at the second trial.

> "The danger that the government may succeed in obtaining more damaging evidence on a retrial is just as real as the danger, for example, that the judge on his own may wish to reconsider, unfavorably to the defendant, the factors which led to his original disposition. We think that there must be repose not merely as to the severity of the court's view, but as to the severity of the crime." [12a]

Marano v. United States, 374 F.2d 583, 585 (1st Cir. Mar. 23, 1967). Contra, Starner v. Russell, 378 F.2d 808 (3rd Cir. May 25, 1967).

An analogy may be drawn between the solution adopted by the Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in response to the problems raised by Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), and the issue here.[13] The Court had earlier held

in *Betts* that whether the conviction of an unrepresented defendant was a denial of due process depended upon whether "special circumstances" existed which would, in a particular case, "constitute a denial of fundamental fairness." 316 U.S. at 462, 62 S.Ct. at 1256. But in *Gideon*, there was forthright recognition that to require such a showing, in an area in which the chance of undetectable prejudice is so great, was too heavy a burden to cast upon an accused. The controlling point was not that the absence of counsel necessarily prejudiced the defendant, but that it created the *opportunity* for unfairness. For this reason, the *Gideon* Court made the presumption of injury irrebutable.

■ Similarly, improper motivation is characteristically a force of low visibility. In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old. Seldom will this policy result in inadequate punishment. Against the rare possibility of inadequacy, greater weight must be given to the danger inherent in a system permitting stiffer sentences on retrial— that the added punishment was in reaction to the defendant's temerity in attacking the original conviction. Even the *appearance* of improper motivation is a disservice to the administration of justice.

### III. *Equal Protection*

The equal protection clause of the Fourteenth Amendment likewise compels a rule barring a sentence in excess of the one invalidated, and this protection extends even to one seeking to avail himself of a state's post-conviction reme-

---

12. One commentator has noted that the strongest reason for denial of credit is the desire of courts to discourage appeals. Whalen, Resentence without Credit for Time Served: Unequal Protection of the Laws, 35 Minn.L.Rev. 239, 248 (1951).

12a. *Marano* held flatly that it would be improper for the court to increase the sentence on the basis of additional testimony which came out at the new trial, but suggested by way of dictum that in

some circumstances it might not be "inappropriate for the court to take subsequent events [as disclosed in a new presentence report] into consideration, both good and bad." As to the dictum, we do not agree, for the reasons developed in the text of this opinion.

13. Cf. Note, The Defendant's Challenge to a Racial Criterion in Jury Selection: A Study in Standing, Due Process and Equal Protection, 74 Yale L.J. 919 (1965).

dies because of non-constitutional errors in the original trial.[14]

North Carolina strictly forbids an increase in a defendant's sentence after the trial court's term has expired and service of sentence has commenced.[15] Thus the threat of a heavier sentence falls solely on those who utilize the post-conviction procedures provided by the State. If the State wishes to institute a system permitting upward revision of sentences, it must proceed upon a rational basis in selecting the class of prisoners it will subject to this threat. It may not discriminate in this regard against those who have availed themselves of the right to a fair trial. This is an arbitrary classification offensive to the equal protection clause.[16] As the court-appointed counsel for the defendant has put it:

"The risk of a harsher sentence is borne exclusively by those who pursue some post-conviction remedy. Yet there is no reason to suppose that the original sentences of this group are any more likely to warrant review as a class than the sentences of other convicts who are not subject to the same risk. The vulnerable class appears to be quite equivalent to a class described by race, right-handedness, indigence, or some other factor equally irrelevant in any proper determination of those whose sentences might appropriately be reviewed."[17]

14. See Whaley v. North Carolina, 4 Cir., 379 F.2d 221 (decided this day).

15. E.g., State v. Lawrence, 264 N.C. 220, 141 S.E.2d 264 (1965); State v. McLamb, 203 N.C. 442, 166 S.E. 507 (1932); State v. Warren, 92 N.C. 825 (1885).

16. See McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), which declares that classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis." Id. at 190, 85 S.Ct. at 287 [quoting from Gulf, C. & S. F. R. Co. v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666 (1897)]. See also, e.g., Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Skinner v. State of Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L. Ed. 1655 (1942).

The issue has been phrased by one writer as follows:

"Is there any rational justification for punishing *this* defendant substantially more than others who committed the same offense, simply because *this defendant* was not given a fair trial or was not properly sentenced the first time?"

Whalen, Resentence without Credit for Time Served: Unequal Protection of the Laws, 35 Minn.L.Rev. 239, 245 (1951). (Italics in original.) His answer is that "there is no sound rationale for this treatment of an unfortunate class of criminal defendants. The injustice and illegality of the treatment the defendant has received before his first sentence began is no justification for discriminating against him at a second proceeding. * * *

"It scarcely needs argument to show that the circumstance that the defendant has received treatment in the first instance which was violative of the Constitution is not a valid reason for making the distinction. Nor is it a policy congruent with our constitution to permit courts to deny credit for time already served, and thus discourage the use of review procedures."

Id. at 251.

17. Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606, 683 (1965).

The instant case does not confront us with the question of whether the classification is reasonably related to a valid *legislative* purpose. The distinction we are asked to hold unconstitutional is solely a judicial creation, and thus cannot claim the presumption in favor of a legislatively declared public policy. There can be no justification, nor has the State offered any, for special treatment of this isolated class. Even if the State were to attempt to treat as a special class subject to increased penalties those as to whom additional adverse information were discovered after the first sentencing, the short answer, as we have shown, would be that this is prohibited. As Judge Marshall said in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 859 (2d Cir. 1965):

"It is difficult to understand how the fundamental unfairness inherent in allowing a prosecutor to 'do better a second time' (Mr. Justice Frankfurter,

Not only is the classification not a rational means for effectuating any legitimate state policy, but it also frustrates the pursuit of post-conviction remedies provided by the State. Courts should be especially vigilant to protect access to these remedies, rather than strive to fashion a doctrine inhibiting the exercise of the right to review.[18]

Even if the State's policy is to prevent insubstantial appeals, limiting the class to successful appellants would not be a rational means of accomplishing this purpose, since it has too broad a sweep—chilling meritorious appeals as well as frivolous ones. The inequity of such a system is apparent when it is realized that only prisoners whose appeals have been found meritorious are subjected to the peril of a higher resentence. Ironically, those whom the State admits having initially denied a fair trial are the only ones who stand to receive greater

punishment. Thus, the threatened class is both underinclusive, in that those who do not pursue post-conviction remedies might also have been too leniently sentenced, and overinclusive, since not all bearing the risk (and thus deterred from attacking an unconstitutional conviction) were originally dealt with too lightly.[19]

## IV. *Double Jeopardy*

█ In view of the foregoing, we need not rest our decision on double jeopardy grounds. We are persuaded, however, that the constitutional protection against double jeopardy would also be violated if an increased sentence or a denial of credit is permitted on retrial.[20]

█ Double jeopardy, rather than being a single doctrine, is actually comprised of three separate though related rules,[21] prohibiting (1) reprosecution for the same offense following acquittal,[22]

---

concurring in Brock v. North Carolina, supra, 344 U.S. [424] at 429, 73 S.Ct. [349], at 351, 97 L.Ed. 456) is mitigated by conditioning this second chance on a successful appeal by the accused."

18. See Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L. Ed. 891 (1956), holding that even though "a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all," it cannot, without violating the due process and equal protection clauses, grant appellate review in such a way that some convicted defendants are discriminated against. This thought was further amplified by Justice Frankfurter, concurring in the judgment:

"[N]either the fact that a State may deny the right of appeal altogether nor the right of a State to make an appropriate classification, * * * nor the right of a State to lay down conditions it deems appropriate for criminal appeals, sanctions differentiations by a State that have no relation to a rational policy of criminal appeal or authorizes the imposition of conditions that offend the deepest presuppositions of our society."

351 U.S. at 21–22, 76 S.Ct. at 592. See also Douglas v. State of California, 372 U.S. 353, 365, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (dissenting opinion).

19. Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 344–53 (1949).

20. We find ourselves in full accord with the Second Circuit in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), as to the resolution of the issue of whether the double jeopardy clause of the Fifth Amendment is applicable to the states. That court concluded that at least certain of the policies militating against placing a defendant twice in jeopardy are "incompatible with due process of law." Id. at 850. As that circuit found true of the multiple prosecutions to which Hetenyi was subjected, similarly, we think that the North Carolina practice of permitting an accused, who has successfully appealed his conviction, to bear the risk of an increased sentence:

"[i]s that kind of double jeopardy * * * [which] has subjected him [to] a hardship so acute and shocking that our policy will not endure it * * * [and] violate[s] those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'"

Palko v. Connecticut, 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed. 288 (1937).

21. See Comment, Twice in Jeopardy, 75 Yale L.J. 262 (1965).

22. United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). See

(2) reprosecution for the same offense following conviction,[23] and (3) multiple punishment for the same offense.[24] In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Supreme Court invoked the first rule, that an accused may not be reprosecuted for the offense of which he was acquitted at the first trial. The Court held that the double jeopardy clause precluded a retrial for first-degree murder following defendant's successful appeal from his conviction of second-degree murder, on the theory that the jury in the first trial, by returning a verdict of second-degree murder, *impliedly acquitted* him of the charge of first-degree murder,

▮ In a footnote, the *Green* majority declared—without further explanation—that Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919),

was "clearly distinguishable." [25] 355 U.S. at 195, n. 15, 78 S.Ct. 221, 2 L.Ed.2d 199. There the defendant was retried for first degree murder and sentenced to death, following reversal of his prior conviction, for which he had received a sentence of life imprisonment. From a reading of the *Stroud* opinion, it appears that the case was argued to the Court on the theory that the defendant was put twice in jeopardy for the same offense merely by being retried on an indictment for first degree murder.[26] There is no indication that the Court was presented with the argument that the risk of an increased penalty on retrial violates the double jeopardy clause by being a double punishment for the same offense. *Stroud* thus stands for no more than the well-established proposition that the double jeopardy clause does not en-

Green v. United States, 355 U.S. 184, 35 Cal.Rptr. 77 (1957), for the doctrine of "implied acquittal." This doctrine has been expanded to include punishment as well as degree of offense. People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963).

23. E. g., In re Nielson, 131 U.S. 176, 9 S. Ct. 672, 33 L.Ed. 118 (1889). Cf. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (reprosecution barred following mistrial due to actions of the government).

24. E. g., Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). See Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462, 67 S.Ct. 374, 91 L. Ed. 422 (1947).

25. Justice Frankfurter, however, maintained that it was all but impossible to distinguish the two situations:

"As a practical matter and on any basis of human values, it is scarcely possible to distinguish a case in which the defendant is convicted of a greater offense from one in which he is convicted of an offense that has the same name as that of which he was previously convicted but carries a significantly different punishment, namely death rather than imprisonment."

355 U.S. at 213, 78 S.Ct. at .237 (dissenting opinion). The Supreme Court of California, in People v. Henderson, 60 Cal. 2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963), agreed with Justice Frankfurter that *Stroud* had been vitiated by *Green*.

Justice Traynor, speaking for the majority, therefore held that an accused may not be given a more severe sentence on retrial obtained after a successful attack on his first conviction. The rationale appears to be that in fixing the punishment at imprisonment for life, the defendant was "acquitted" of the death penalty and hence was protected by the double jeopardy prohibition from "retrial" on the greater of the alternative punishments. (The double jeopardy provision in the California constitution is substantially identical to that of the Fifth Amendment, so that the court did not have to determine whether the Fifth Amendment provision itself was applicable.)

The California courts have not limited the application of the double jeopardy provision to cases in which the prosecutor has sought on the second trial to raise the punishment to the death penalty, but have also followed the rule laid down in *Henderson* where longer prison sentences are involved. People v. Nanga-Parbet Ali, 57 Cal.Rptr. 348, 424 P.2d 932 (Calif.Sup. Ct. Mar. 3, 1967) ; In re Ferguson, 233 Cal.App.2d 79, 43 Cal.Rptr. 325 (1965).

26. The Court discussed only that aspect of double jeopardy which protects a defendant from a "second trial" and held that since the accused had himself appealed his conviction and sought a new trial, he was not entitled to invoke the double jeopardy provision of the Constitution. 251 U.S. at 18, 40 S.Ct. 50.

title a defendant who successfully attacks his conviction to absolute immunity from reprosecution.[27]

It is clear, therefore, that the Court was concerned in *Green* only with that aspect of double jeopardy which prohibits multiple *prosecutions* for the same offense, and was not faced with the precise question that is before us—whether a harsher punishment following retrial for the same offense is prohibited by the double jeopardy clause.

Patton analogizes his situation to that in *Green,* asserting that as Green was "impliedly acquitted" of the *greater degree* of murder when he was convicted of the lesser degree of that offense, similarly, Patton was "acquitted" of any *higher penalty* when he was sentenced to twenty years' imprisonment. And as the accused in *Green* was protected by the double jeopardy clause from retrial for *first* degree murder, by a parity of reasoning, Patton contends that the double jeopardy clause protects him from being "retried" for the penalty of which he had been "acquitted" at his first trial, namely, anything between the twenty years he actually received and the statutory maximum. On retrial, he asserts, he could only be given "up to the degree of punishment of which he was originally convicted." [28]

Defendant recognizes, and we agree, that to maintain that he was "acquitted" at the first trial of any penalty greater than twenty years, is as much a fiction as that he has "waived" the benefit of his initial sentence by appealing his conviction.[29] For this reason, we do not rest solely on the "implied acquittal" doctrine, preferring to emphasize a somewhat different aspect of double jeopardy—the prohibition against multiple punishment. See Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873).[30] It is this aspect which has been consistently relied upon to prohibit an increase in a defendant's sentence, once service has commenced. E.g., Ex parte Lange, supra; United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931); United States v. Sacco, 367 F.2d 368 (2d Cir. 1966); United States v. Adams, 362 F.2d 210 (6th Cir. 1966); Kennedy v. United States, 330 F.2d 26 (9th Cir. 1964).

We perceive no constitutionally significant distinction between the increases prohibited in the cases cited above and an increase in punishment following retrial. Thus, unless a defendant is held to waive this double jeopardy protection in seeking a new trial, a harsher penalty may not be imposed. And we have already declared, in Part II of this opinion, that we decline to predicate a prisoner's exercise of his right to seek a new trial

---

27. See, e.g., Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

28. Van Alstyne, op. cit. supra, note 17, at 635. See Whaley v. North Carolina, 379 F.2d 221 (decided this day).

29. See Part II, supra.

30. "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And * * * there has never been any doubt of * * * [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

\*   \*   \*   \*   \*

[*T*]*he Constitution was designed as much to prevent the criminal from being twice punished for the same offence as being twice tried for it.*"
85 U.S. at 168, 173, 21 L.Ed. 872. (Emphasis supplied.)
   That the framers were concerned with multiple punishment is indicated by the text of the double jeopardy provision initially proposed by Madison, cited in Green v. United States, 355 U.S. 184, 201–202, 78 S.Ct. 221, 231 (1957) (dissenting opinion of Frankfurter, J.): "No person shall be subject, except in cases of impeachment, to more than one punishment *or* one trial for the same offence * * *." (Emphasis supplied.)

on the fiction that he has "waived" the benefits of his initial sentence, because of the restrictive effect this has on access to post-conviction remedies.[31] This is in accord with this circuit's decision in United States v. Walker, 346 F.2d 428 (4th Cir. 1965), that, in seeking correction of an erroneous sentence,[32] a defendant does not waive his double jeopardy right not to be subjected to multiple punishment. See Walsh v. United States, 374 F.2d 421, 426 (9th Cir. 1967) and Ekberg v. United States, 167 F.2d 380, 388 (1st Cir. 1948), discussed more extensively in Whaley v. North Carolina, 4 Cir., 379 F.2d 221 (decided this day).

To summarize, we conclude that increasing Patton's punishment after the reversal of his initial conviction constitutes a violation of his Fourteenth Amendment rights in that it exacted an unconstitutional condition to the exercise of his right to a fair trial, arbitrarily denied him the equal protection of the law, and placed him twice in jeopardy of punishment for the same offense.

We affirm the District Court's order to release the defendant from confinement unless he is constitutionally resentenced by the state court to a term not exceeding 20 years from the date of his original sentence, passed on October 26, 1960, with full credit for the time already served.[33]

Affirmed.

---

31. The primary focus of the majority opinion in *Green* was not on protecting the accused from reprosecution per se, but on protecting his access to post-conviction remedies. See United States v. Ewell, 383 U.S. 116, 127–128, 86 S.Ct. 773, 780, 15 L.Ed.2d 27 (1966) (dissenting opinion of Fortas, J.) :

"Although the decision in *Green* was premised upon the Double Jeopardy Clause, its teaching has another dimension. *Green* also demonstrates this Court's concern to protect the right of appeal in criminal cases."

See also Van Alstyne, op. cit. supra, note 17, at 632.

32. See Note, 80 Harv.L.Rev. 891, 896–97 (1967), where this concept was developed with specific reference to the District Court's decision in the present case.

33. Consequently, having now served nearly 7 years of his 20 year sentence, Patton is presently eligible to be considered for parole. See N.C.Gen.Stat. § 148–58 (Replacement vol. 1964), which provides that a prisoner shall be eligible for parole after serving a fourth of a determinate sentence.