Simeon J. COKE, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 67 Civ. 1219.

United States District Court
S. D. New York.

Feb. 16, 1968.

Anthony F. Marra, New York City, for petitioner; Joshua N. Koplovitz, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for United States of America; Paul B. Galvani, Asst. U. S. Atty., of counsel.

## OPINION

COOPER, District Judge.

This is a petition pursuant to Section 2255 of Title 28, United States Code, to correct a sentence. Alternatively, it is treated as a motion to reduce sentence under Rule 35 of the Federal Rules of Criminal Procedure.

In essence, Simeon J. Coke contends on constitutional grounds raised by him for the first time that his sentence, upon conviction after a third trial to a term of imprisonment longer than that imposed upon conviction after his second trial, is illegal. Accordingly, he seeks a reduction in the term to a period no longer than that imposed after the second trial. For reasons set forth below, we disagree.

### Background of Proceedings

Simeon J. Coke (hereinafter petitioner) was indicted on April 3, 1963 on three counts, each charging a violation of the federal narcotics laws. 21 U.S.C. §§ 173, 174.

Petitioner has been to trial three times upon the indictment. The jury at the first trial, held before Judge MacMahon, was unable to agree upon a verdict. A mistrial was declared on May 24, 1963. In a second trial, before the late Judge Dawson, the jury found petitioner guilty upon all three counts on June 24, 1963. The same day, he was sentenced to six years imprisonment upon each count, the sentences to run concurrently. On appeal, the conviction was reversed. United States v. Coke, 339 F.2d 183 (2d Cir. 1964).

Petitioner's third trial, held before this Court and a jury in January, 1965, again resulted in a conviction upon all

three counts. The Court ordered a pre-sentence investigation; none had been made prior to sentence following the second trial. After the report, petitioner was sentenced to five years imprisonment on each of Counts One and Two, to run consecutively with each other, and five years on Count Three, to run concurrently with the sentence imposed on Counts One and Two.[1]

Petitioner later moved, on grounds other than those urged here, for reduction of sentence. The motion was denied on March 24, 1965. Thereafter, on July 18, 1966, petitioner's conviction upon the third trial was affirmed. United States v. Coke, 364 F.2d 484 (2d Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 877, 17 L.Ed.2d 789 (1967). Petitioner raised no issue on appeal as to the legality of the ten year sentence imposed.

By this motion, filed March 30, 1967 (the record on this motion was completed August 28, 1967), petitioner now contends for the first time that this Court's sentence of imprisonment for a period amounting to ten years, exceeding the six-year period imposed after his second trial, violates his constitutional rights to due process, equal protection of the laws, and protection against double jeopardy. In doing so, he places reliance upon novel recently decided cases in other federal circuits, the merits of which will be examined after reviewing the Government's preliminary points in opposition. It contends his claims are both untimely and premature, as well as beyond the scope of Section 2255.

*Scope of 28 U.S.C. § 2255 and Timeliness of Petitioner's Claims*

█ The Government properly notes that petitioner could have but did not raise on appeal the issues pressed here. It argues that this failure precludes raising them now. This position is buttressed by the general rule that "the writ of *habeas corpus* will not be allowed to do service for an appeal." Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588,

1590, 91 L.Ed. 1982 (1947). The *Sunal* decision recognized, however, that habeas corpus is a proper remedy "where the trial or sentence by a federal court violated specific constitutional guarantees." At 178–179, 67 S.Ct. at 1591.

In analogous collateral Section 2255 proceedings, judicial decisions have tended to limit the raising of constitutional questions not raised upon appeal to situations presenting "unusual circumstances." See United States v. Re, 372 F.2d 641 (2d Cir.), cert. denied, 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967); United States v. Allocco, 305 F.2d 704, 708 (2d Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 545, 9 L.Ed.2d 511 (1963); United States v. Angelet, 255 F.2d 383, 384 (2d Cir. 1958) ("exceptional circumstances"). These and other cases mainly involve an attack not on the nature or terms of sentence but rather on the underlying conviction upon which sentence is predicated.

█ Supporting the varied decisions so limiting the scope of Section 2255 is the policy of bringing finality to criminal proceedings and the practical recognition that it is oft impossible to investigate the facts of the error belatedly asserted or to reprosecute, perhaps many years after the original trial. Chapman v. United States, 376 F.2d 705 (2d Cir. 1967); United States v. Re, supra; Thornton v. United States, 368 F.2d 822 (D.C.Cir.1966).

█ These reasons are unpersuasive here where the substantial constitutional claims do not present a commensurate burden on the administration of justice. The error claimed relates to sentencing alone, not the trial process, and is one solely of law, requiring neither retrial nor an evidentiary hearing. Accordingly, we hold the petition is properly made under Section 2255.

*Prematurity of Petitioner's Claims Under Section 2255*

The Government alternatively argues that the Petition should be dismissed as

---

1. Petitioner could have been sentenced to a maximum imprisonment of twenty years upon each count.

premature. It suggests that Petitioner is currently imprisoned pursuant to the five year term imposed under Count One, a sentence clearly proper. Thus, he would not be "in custody" under the sentence attacked as Section 2255 requires. In such a circumstance, dismissal may be proper. See Duggins v. United States, 240 F.2d 479 (6th Cir. 1957).

 However, based upon the papers before us,[2] and including "good time" in computing petitioner's release date,[3] we conclude that the petitioner is presently "in custody" under the second five-year term and accordingly his application is not premature. In any event, we view the alleged errors under Rule 35 of the Federal Rules of Criminal Procedure, pursuant to which a motion to correct an illegal sentence may be made at any time.[4]

We now turn to the merits.

### The Sentence

 The petition generally alleges that the reason this Court sentenced petitioner to imprisonment for a ten year period rather than the six years imposed after the second trial was to punish him for having appealed and as a threat to deter others in their exercise of that right. This is fully and conclusively contradicted by the entire sentencing proceedings. (Transcript, February 24, 1965.) The thought itself is repugnant. Such is not the quality of justice prevailing here.

Rather, this Court took pains to order a presentence investigation and to study the probation officer's report. Its revelations, the nature of the offense commit-

ted, the events occurring at the third trial, including petitioner's deportment there, the necessity for a deterrent, and an estimate of his dangerousness to the community at large led this Court to remark upon sentencing that it was

\* \* \* hard put to come to an agreement that the sentence that Judge Dawson meted out was [in June, 1963] or would be today [February, 1965] the appropriate sentence.

At the second trial, after the jury was excused, the Court decided to proceed to sentence. It inquired about petitioner's criminal record and the Assistant United States Attorney reported he had a record in Cuba "which involves narcotics and I think about five theft charges. \* \* \*." (Transcript of Trial, June 24, 1963, p. 484.) Defense counsel was then heard. He referred to petitioner as "a bad boy" but asked for consideration. (Id. p. 486) The Court then asked him for information about petitioner and was told petitioner did odd-painting jobs in construction but had no job of substance; was never married, but "has a three-year old child which of course he is taking care of" although the child lived with his mother. (Id. p. 488).

Judge Dawson pursued the matter and said "I want to find out more about him" and asked if there were other children. (Id. p. 488) Defense counsel claimed "[t]hat is the only child apparently" and declined knowledge of any other. (Id. p. 488) In pleading for leniency, defense counsel stressed the defendant's "obligation" of support and when the Court, relying on testimony adduced upon the trial, replied defendant was not supporting it,

---

2. The candid affidavit of the Assistant United States Attorney, dated August 28, 1967, in opposition to the reply brief of petitioner's assigned counsel shows that petitioner has been incarcerated since March 29, 1963 and that he has been credited for all jail time prior to conviction. With "good time" deductions (18 U.S.C. § 4161), the sentence under Count One would have terminated in July, 1967. Although for substantial violations of prison rules "good time" may be revoked, the Court has not been informed either that

revocation has occurred or is about to occur.

3. Under Section 2255, "good time" is to be considered in computing time of release. United States v. Montanez, 371 F.2d 79, 81 (2d Cir. 1967), following Andrews v. United States, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963).

4. If petitioner's claims were to be upheld, we would view the sentence illegal within the meaning of Rule 35 to the extent of the increase.

defense counsel retorted that such was not the testimony of defendant or the child's mother who took the stand; rather, "[a]pparently he has contributed to the child's support." (Id. p. 489)

The presentence report after the third trial revealed more.[5] Contrary to defense counsel's assertions before Judge Dawson, it showed petitioner had fathered two other children, each by a different paramour (a total of three children by three paramours), and that he not only had failed to contribute to their support, but also to the support of the child about which Judge Dawson first learned when the defense at the second trial saw fit to use its mother as a witness on petitioner's behalf.

When dealing with a defendant's private life, his sense of duty to children fathered by him, their number, their whereabouts, as well as their current source of support are factors generally obtained from the lips of defendant himself. The Court at the second trial had no really independent means of ascertaining the accuracy of the information given to it. Is not the Court entitled to full and fair disclosure of facts concerning matters on which it has made inquiry? As will be seen from the text, the petitioner apparently sat silent while his defense counsel made remarks, to defense counsel's best knowledge, that were in fact misleading. We wonder whether the community is to suffer and the petitioner to profit by his own silence in such circumstances, even if he casts his claims in constitutional tone? How far can petitioner remind us of alleged constitutional rights, the basis for which, if rights they are, is in large part the result of his own omission to set the record straight?

This revelation of additional children illumines the depths of petitioner's moral depravity, and exemplifies deportment which not only outrages most right-thinking judges, but justifies little confidence in the rehabilitative potential of the prisoner before the bench. As this Court remarked upon sentence, petitioner was "indifferent to [his] fundamental sense of obligation"—a sense Judge Dawson had heard urged as a factor to be given great weight in the sentence.

The presentence report confirmed petitioner's lack of any continuous work record and disclosed that the Bureau of Narcotics regarded defendant as a "large supplier" of cocaine in the New York area.[6] As to the latter point, we recognize that such a disclosure, not tested against cross-examination in open court, does not carry the weight of evidence. However, it is properly considered (see Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)); and we note the practice that the Bureau's records are usually compiled from information supplied by the arresting officers, those who in part testified at trial and whose veracity was subject to jury scrutiny.

Finally, the presentence report confirmed that petitioner was not an addict —one who sold cocaine to support a habit—but rather was an out and out seller engaged in his nefarious trade for profit alone—a peddler of high danger to the community.

Taking the record as a whole, including "all the disclosures in that pre-sentence report, and reaching out * * * to find something * * * [to] give [petitioner] credit for * * *, I [found] the report barren * * *" (Transcript of this Court's remarks on sentencing, February 24, 1965, p. 10) and sentence was imposed as above stated.

The increased sentence was not predicated upon many of those factors which

---

5. Because of this Court's regard for the confidentiality of the pre-sentence report, both as to the source of information as well as its substance, the details repeated which are of a private nature would normally not appear. They are essential, however, in light of the claims petitioner has made.

6. Some confirmation of this fact is the progressively larger sales involved in the 3 counts of the indictment and the remarks of the Assistant United States Attorney before this Court upon sentencing (Transcript of Sentencing, February 24, 1965, p. 8).

have been traditionally advanced in cases dealing with alleged inequality of sentencing—the conduct of the defendant between trials;[7] the opportunity to gauge the defendant's general demeanor and testimonial veracity;[8] and the degree and quality of the crime for which defendant was convicted.[9]

Equally so, the increase did not represent a variance in sentencing philosophies, or a different appraisal of the same facts. Rather, as noted above, the facts before Judge Dawson and this Court varied in their revelation as to the quality of his human performance and his potential for worthy deportment.

### The Constitutional Claims

The petition alleges that by increasing petitioner's sentence after the third trial his federal constitutional rights under the fifth amendment, to due process, equal protection of the laws and against double jeopardy, were violated.

These points were recently raised upon appeal in this Circuit and dismissed without particular comment as not warranting discussion. United States v. Ellenbogen, 365 F.2d 982 (2d Cir. 1966) (341 F.2d 893 (2d Cir. 1965)), Docket No. 30102, see Appellant's Brief, Point XII; Government's Brief, Point XI, and Appellant's Reply Brief, Point XI.

The thrust of more recent decisions by the Court of Appeals in other Circuits, however, have reached a contrary result and upon their opinions petitioner here relies. Marano v. United States, 374 F.2d 583 (1st Cir. 1967); Patton v. State of North Carolina, 381 F.2d 636 (4th Cir. 1967), affirming 256 F.Supp. 225 (W.D.N.C.1966), cert. denied 390

U.S. 905, 88 S.Ct. 818, 19 L.Ed. 871 (1968); see also, Gainey v. Turner, 266 F.Supp. 95 (E.D.N.C.1967); Walsh v. United States, 374 F.2d 421, 426 (9th Cir. 1967) (dicta). See also, ABA Standards, Sentencing Alternatives and Procedures, § 3.8 (Tent. Draft, Dec. 1967).

In essence, the due process claim rests upon the suggested rejection of the theory that in appealing a criminal conviction a defendant consents to proceedings de novo, including resentence if the original judgment is vacated and a new trial ordered. This legal fiction is said to impose an unconstitutional condition upon the right of appeal, putting defendants to a "grisly choice" akin to that denounced in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)—either appealing a conviction rendered upon proceedings constitutionally unfair and risking harsher punishment, or abandoning that right and serving a prison term under a sentence invalid in all but name. See Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (rejecting the Government's contention that defendant "waived" his double jeopardy defense to a second prosecution on a first degree murder charge by successfully appealing his conviction of murder in the second degree).

The equal protection argument is similar. Defendants who are sentenced and committed may not have their sentences thereafter increased, even if new and extremely significant information relevant to sentence, developed for the first time, is then obtained by the Court, or the sentencing judge finds the sentence imposed was not what he originally intended. Ex parte Lange, 85 U.S. (18

---

7. Petitioner was incarcerated during this period.

8. Defendant testified at both his second and third trials. In this regard, the case is unusual. Generally, the issues raised here arise after a second conviction and where a defendant's initial conviction rests upon a guilty plea or a trial at which he did not testify. The first judge accordingly does not have an opportunity to view demeanor. After retrial, where a defendant testifies, his veracity and

demeanor are subject to view and provides insights highly relevant to the trial judge's sentencing disposition.

9. It must not be forgotten, in considering the defendant individually and being fair in judgment that "the immediate aim of the enforcement of laws against crime is the protection of the public." 26 F.R.D. 231, 379 (1959) (Report of Summarizing Committee, Pilot Institute on Sentencing, Proceedings, Boulder, Colorado).

Wall.) 163, 21 L.Ed. 872 (1873); United States v. Sacco, 367 F.2d 368 (2d Cir. 1966). On the other hand, defendants who successfully appeal or obtain post-collateral relief, because of the "consent" or "waiver" theory, run a risk of harsher sentences if convicted upon retrial. It is urged that no rational sentencing policy justifies this bifurcated classification of defendants.

Finally, it is said that increasing sentence upon retrial results in multiple punishment for the same offense indistinguishable from situations in which the Supreme Court has held reprosecutions barred by the proscription against double jeopardy on implied acquittal theories.

Recent decisions have explored these arguments at some length, with exhaustive scholarship, reaching conflicting results. Their main thrust is briefly indicated below.

In *Marano*, defendant was originally sentenced to three years upon conviction for receiving and conspiring to receive stolen goods transported in interstate commerce. After appeal and reversal, he was retried before the same judge and again convicted. He was then sentenced to five years imprisonment. The sentencing judge expressly disclaimed penalizing him for the appeal and based the increase in sentence upon the presentence report and additional testimony at the second trial. Emphasizing that a defendant's right of appeal must be unfettered and that he "should not have to fear even the possibility that his exercise of his right to appeal will result in the imposition of a direct penalty for so doing," the Circuit Court remanded the case for resentencing. In reaching this conclusion, it adopted no hard and fast rule that sentence upon retrial cannot be increased; rather, to support an increase, "substantial justification * * * is needed" and the Court found none in the record. Presumably, additional evidence against a defendant at retrial and information in a further presentence report, as to defendant's conduct pending appeal and retrial, unless affirmatively stated in the record, cannot support an increased sentence in the First Circuit. In dictum, moreover, the Court indicated that, if sentence after a new trial and conviction were by a new judge, any increase in sentence would not be justified by his having a "different approach towards sentencing."

In passing, it occurs to us that much in *Marano* has merit, even placing to one side the constitutional foundation upon which it may rest.

### Some Factors in Sentencing

Our society has advanced from the day when each criminal act carried a fixed and single penalty—permitting no variation for the circumstances under which it was committed or appraising its meaning in the life context of the individual defendant. No longer do we say, alone, that punishment must fit the crime. It must also fit the defendant as a member of the community. At the same time, we bear in mind, " * * * justice, though due the accused, is due to the accuser also." Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934).

To provide for the rehabilitative ideal, yet permit a disposition that can serve as a deterrent for a defendant and others, and be effective punishment for the illegal conduct, thus doing justice to defendant and community alike, Congress has enacted sentencing statutes which provide maximum or maximum and minimum periods within different forms of sentence. No calculus prescribes a single proper disposition amongst the available alternatives.[10] However, disparity of treatment between defendants and of the same defendant after retrial has become a cause for concern.[11] To lessen it within

---

10. See generally, ALI–ABA, The Problem of Sentencing (1962); Advisory Council of Judges of the National Probation and Parole Association (now the National Council on Crime and Delinquency), Guides for Sentencing (1957).

11. See Rubin, Disparity and Equality of Sentences, 40 F.R.D. 55 (1966).

the judicial process requires regard to uniformity of treatment for defendants similarly situated, without failing, however, to recognize that individualization of sentence requires full and accurate knowledge and understanding of a defendant's background and potential. The proper exercise of this discretion, no small burden to the conscientious, has repeatedly been deemed vital to the administration of justice. See, e. g., Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); Howard v. Fleming, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121 (1903); United States v. Vita, 209 F.Supp. 172 (E.D.N.Y.1962), aff'd, 294 F.2d 524 (2d Cir. 1962).

 Where the original or a new judge after a defendant's second conviction for the same crime seeks to increase sentence, the increase should not be one of whim, or because of an altered or different sentencing philosophy based on the facts before the sentencing judge at the first trial. To eliminate the possibility that such or other insubstantial reasons may have prompted the increase, sentencing judges should not hesitate to affirmatively place on the record the basis of their action. This will aid the defendant as well as the reviewing court. Upon commitment, with time to reflect upon his background and future, an unwarranted increase fosters in defendant no respect for justice, increases his animosity, and impedes prison, parole and probation personnel in offering him assistance.

On the other hand, *Marano* goes too far in suggesting that new or additional information of significant proportions about a defendant's background prior to the first trial should not be allowed to justify an increased sentence, even if the information was not available to or considered by the first sentencing judge. A few practical examples come to mind. The officer conducting presentence investigation following conviction at the first trial may be unable to locate some informants who, when reached after the second conviction, reveal other sides of defendant's facade—undiscovered crimes,

a man playing fast and loose with business and personal obligations—which bear on his capacity to adjust to lawful conduct. In other cases, the sentence may be based on the fingerprint record and allocution alone. If the record is "clean," imprisonment may not be imposed or a term set at short duration. After retrial, with a full study presentence, the record may be found in error; the Court may learn for the first time that defendant is a recidivist or one who engaged in conduct involving a high degree of moral turpitude. Is defendant to benefit by the error and the community to suffer? Frequently, the defendant does not testify at the first trial but takes the stand at the second when upon cross examination, and for the first time, there is developed his iniquitous deportment of an alarming nature. Another face comes to light. Should the first sentence gag the second judge from meting out a sentence appropriate and warranted in view of new, pertinent factors?

 As we see it, where the new or additional information relates to a significant aspect of defendant's life habits and conduct, affecting his potential danger to society, his capacity to live within its legal norms, a change in form (e. g. from probation to imprisonment) or increase of sentence (e. g. from six to ten years) is warranted. If the information is favorable, the sentence may be lessened or modified. On the other hand, if the new or additional information is cumulative of other known unfavorable factors or the increase results from judicial attitude only, we are inclined to agree the original sentence should provide a maximum limit in terms of severity.

*Limits on Discretion in Sentencing*

The *Patton* case would not permit such flexibility. It involved a federal habeas corpus proceeding brought by a defendant sentenced in a state court to an increased prison term upon conviction at a second trial after his first conviction was vacated because he was denied a fair trial. It broadly held that the in-

creased punishment denied him due process and equal protection of law and was inconsistent with the prohibition against double jeopardy. Noting the virtually "impossible task for the prisoner to prove improper motivation" of a judge upon resentence, some evidence in the literature that sentences upon retrial tend to be increased,[12] and the "equally impossible, and most distasteful" task for reviewing courts "to pry into the sentencing judge's motivation to ascertain whether vindictiveness played a part," the Court in an exhaustive opinion by Judge Sobeloff found it necessary, "[i]n order to prevent abuses, [that] the fixed policy must necessarily be that the new sentence shall not exceed the old." 381 F.2d at 641. In this regard, *Patton* agreed with *Marano* that additional testimony upon retrial is an insufficient basis to increase sentence, but disagreed with *Marano's* dicta that events subsequent to the first trial may provide such a justification.

The flat all-embracing prohibition of *Patton* and the sweeping statement of the constitutional principles upon which it rests were rejected in United States v. White, 382 F.2d 445 (7th Cir. 1967). There, upon retrial and conviction for mail fraud, the second judge increased the term of sentence. He expressly pointed to additional material in the presentence report covering the three year period since sentencing upon the first conviction. Leaving a contrary analysis to the Supreme Court, it concluded that

> * * * when, as here, it appears in the record that the sentencing judge is not penalizing the defendant for having exercised his right to appeal, the imposition of a greater sentence upon reconviction does not constitute a denial of due process and that such action lies within the discretion of the district judge. Similarly, as to the defendant's double jeopardy argument * * * (p. 448)

*White* also agreed, on its reading of *Marano*, that increased sentence should be allowed where "circumstances disclosed in a presentence report warrant such a step." (p. 449) However, contrary to *Marano*, it adopted the view of United States ex rel. Starner v. Russell, 378 F.2d 808 (3d Cir. 1967) that

> * * * when a new trial is ordered, [the judge] may impose a sentence greater than one he had earlier vacated, and * * * it is unnecessary to articulate the reason for any differentiation in the term of the sentence. (p. 811)

*Starner* was a federal habeas corpus proceeding brought by a state defendant challenging increased sentence upon retrial after his first sentence, imposed upon a guilty plea, was vacated because he was denied counsel. The Third Circuit reversed the District Court's holding that the second sentence was unconstitutional. In its view,

> When [defendant] appeared * * * at the second trial, the slate had been wiped clean and it was an entirely new case * * * (p. 811)

To speculate that sentence upon retrial will be increased

> * * * would seem to trespass on the integrity of the trial judge who, upon hearing all the evidence, with the whole panorama of defendant's crime laid out before him, conscientiously passes sentence * * * (p. 811)

The Supreme Court, although not squarely presented with the points here raised, has not disturbed increased sentences upon retrial. See, e. g., Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); Robinson v. United States, 144 F.2d 392 (6th Cir. 1944), aff'd, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); see also, Green v. United States, 355 U.S. 184 at 195, n. 15, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

---

12. See Note, Increased Sentence and Denial of Credit on Retrial Sustained Under Traditional Waiver Theory, 1965 Duke L.J. 395; Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965); Note, Unconstitutional Conditions, 73 Harv.L.Rev. 1595 (1960).

## Conclusion

 Reviewing petitioner's claims, and while impressed with the due process and equal protection arguments, they do not justify the relief urged.

First, in *Ellenbogen,* supra, this Circuit did not find it necessary to even discuss the issues. It found no infirmity in the increased sentence. Upon the facts and circumstances set forth above, this Court finds none here.

Secondly, other Circuits, absent a finding of improper motivation, have reached no consensus on the constitutional claims, and only the Fourth Circuit, in *Patton,* has adopted a prophylactic rule on constitutional grounds. We believe that if the *Patton* rule is to obtain, it is not for this Court to pronounce it.

Third, even if the *Patton* rule were to be adopted, our view is that it should not be retroactively applied. When a change in the law occurs after the questioned judgment becomes final, the effect of the change upon collateral attack of the judgment will depend upon the purpose of the new rule, reliance placed upon the prior rule, and the effect of applying the new rule upon the administration of justice. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). We conclude that the thrust of the *Patton* prohibition, as with the rule of *Marano,* is to leave unfettered the right of appeal, and to eliminate any possible hesitancy by a defendant to exercise that right based, realistically or not, on fear of increased punishment upon conviction after a retrial. This desirable aim would not be substantially advanced by applying the *Patton* or *Marano* rules to judgments already final. When defendants in such cases did appeal, presumably they knew that if successful and reconvicted, the law permitted resentence with legal alternatives at the discretion of the sentencing judge—the same sentence as at the first trial, as well as more or less severe. Such was established doctrine. Finally, as to judicial administration, we do not shrink from the duty to review petitions which might be brought if we viewed the rule retroactive. However, as noted in *Linkletter,* "though the error complained of might be fundamental it is not of the nature requiring * * * [the] overturn [of] all final convictions based upon it." At 639–650, 85 S.Ct. at 1743.

Accordingly, the petition is, in all respects, denied.