## MOON *v.* STATE OF MARYLAND

[No. 287, September Term, 1967.]

*Decided July 3, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Robert Anthony Jacques* for appellant.

*Edward F. Borgerding, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Thomas A. Garland, Assistant Attorney General,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Dennis Mullene Moon was convicted of armed robbery and sentenced to twelve years. *Schowgurow v. State,* 240 Md. 121, gave him the opportunity to elect to have his indictment nullified, and he did. On retrial he was again found guilty of armed robbery and also of larceny and assault with intent to murder for which he had not been tried the first time. Judge Pugh, of the Circuit Court for Montgomery County, sentenced him to twenty years for armed robbery, with credit for the time he had served, and suspended ten-year sentences on each of the other counts. The Court of Special Appeals affirmed the judgment and sentence in *Moon v. State,* 1 Md. App. 569, on the authority of *Hobbs v. State,* 231 Md. 533, *cert. den.* 375 U. S. 914 (1963), in which we held that after the convicted man had won a reversal on appeal the judge on retrial could impose a greater punishment than had been previously imposed.

We granted certiorari because since *Hobbs* we had decided *State v. Barger,* 242 Md. 616, the Court of Appeals for the Fourth Circuit had decided *Patton v. State of North Carolina,*

381 F. 2d 636 (1967), and the Court of Special Appeals of
Maryland had decided *Reeves v. State,* 3 Md. App. 195.

*Barger* held that where there had been a regular trial, upon
a valid indictment, at which the accused had been convicted
of murder in the second degree but explicitly acquitted of mur-
der in the first degree, his appeal and the granting of a new
trial did not waive his right successfully to plead double jeop-
ardy to the charge of first degree murder at the second trial.
In answer to the State's reliance on *Hobbs* ("the Court hears
the case as if it were being tried for the first time and considers
the entire matters of verdict, judgment and sentence as if there
had been no prior trial"), we said *Barger* and *Hobbs* were dis-
tinguishable, and added at p. 627 :

> "But even if the cases were indistinguishable, the re-
> sult would be the same, for, under the circumstances
> of this case, the rule with respect to double jeopardy
> is such as to preclude a retrial of the defendant
> at the instigation of the State for murder in the first
> degree."

The opinion went on to say (pp. 627-28) that :

> "The further contention of the State that the appeal
> by the defendant in the first *Barger* case from his con-
> viction of second degree murder had the effect of waiv-
> ing the question of double jeopardy, or barring a plea
> to that effect, as to the charge of first degree murder
> of which he was acquitted, based on the premise that
> the granting of a new trial completely nullified the
> prior trial, is not only unreasonable under the circum-
> stances of this case, but is not supported by the cases
> in this and other states. The contention [that Barger's
> appeal was a waiver] is unreasonable (a) because to
> hold that the appeal and consequent granting of a new
> trial constituted a waiver would be inconsistent with
> the fact that the defendant sought only to reverse so
> much of the verdict as supported his conviction of sec-
> ond degree murder and (b) because the opening of the
> whole case for reconsideration would place too great
> a price on the right of an accused to appeal."

In *Patton* the Court said the question to be answered was whether a defendant may be sentenced to a longer term of imprisonment at his second trial than he received after his first conviction, vacated on constitutional grounds. Its answer was that under no circumstances can he be. Three reasons were given—denial of due process, lack of equal protection, and double jeopardy. The due process clause of the Fourteenth Amendment, said the Court, does not permit the "fiction" that a reversal on appeal wipes out all that went before, and that by appealing the accused is deemed to have assumed the risk of a greater sentence. The Court said (pp. 639-41):

> "the District Court [at 256 F. Supp. 225] declared that predicating Patton's constitutional right to petition for a fair trial on the fiction that he has consented to a possibly harsher punishment, offends the due process clause of the Fourteenth Amendment. It would confront the prisoner with the unhappy choice of either abandoning his constitutional right to a fair trial and serving out his prison term under the invalid sentence, or exercising that right under the hazard, in the event of a second conviction, of being treated as though the years of imprisonment already served had never occurred.
>
> "This is like the 'grisly choice' discountenanced in *Fay v. Noia,* 372 U. S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). 'The law should not, and in our judgment does not, place the defendant in such an incredible dilemma.' *Green v. United States,* 355 U. S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957). North Carolina deprives the accused of the constitutional right to a fair trial, then dares him to assert his right by threatening him with the risk of a longer sentence. It may not exact this price. Enjoyment of a benefit or protection provided by law cannot be conditioned upon the 'waiver' of a constitutional right.
>
> \* \* \*
>
> "The District Court held that Patton's punishment could not be increased unless evidence justifying a

harsher sentence appeared in the record, and that the State must bear the burden of showing that such facts were introduced at the second trial, since 'where the record disclose[d] no colorable reason for harsher punishment,' the effect would be to inhibit the constitutional right to seek a new trial. 256 F. Supp. at 236. We agree with the District Court that it is an impossible task for the prisoner to prove improper motivation of the trial judge. It is equally impossible, and most distasteful, for federal courts to pry into the sentencing judge's motivation to ascertain whether vindictiveness played a part.

"We do not think, however, that a defendant's rights are adequately protected even if a second sentencing judge is restricted to increasing sentence only on the basis of new evidence. We are in accord with the First Circuit, which has recently held that a sentence may not be increased following a successful appeal, even where *additional* testimony has been introduced at the second trial.

\* \* \*

"\* \* \* improper motivation is characteristically a force of low visibility. In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old. Seldom will this policy result in inadequate punishment. Against the rare possibility of inadequacy, greater weight must be given to the danger inherent in a system permitting stiffer sentences on retrial—that the added punishment was in reaction to the defendant's temerity in attacking the original conviction. Even the *appearance* of improper motivation is a disservice to the administration of justice."

On equal protection the Court said (p. 642):

"If the State wishes to institute a system permitting upward revision of sentences, it must proceed upon a rational basis in selecting the class of prisoners it will subject to this threat. It may not discriminate in this

regard against those who have availed themselves of the right to a fair trial. This is an arbitrary classification offensive to the equal protection clause."

On double jeopardy the Court's thought was (pp. 643-44, 645-46) :

"Double jeopardy, rather than being a single doctrine, is actually comprised of three separate though related rules, prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for the same offense. * * *
\* \* \*

"* * * Thus, unless a defendant is held to waive this double jeopardy protection in seeking a new trial, a harsher penalty may not be imposed. And we have already declared, in Part II of this opinion, that we decline to predicate a prisoner's exercise of his right to seek a new trial on the fiction that he has 'waived' the benefits of his initial sentence, because of the restrictive effect this has on access to post-conviction remedies."

In *Reeves* the accused was convicted of rape and given life. The United States Court of Appeals for the Fourth Circuit vitiated his conviction and on his second trial he was sentenced to twenty years imprisonment, the maximum allowed by statute under the jury's verdict, with no allowance for the approximately six years he had served under his first sentence. The Court of Special Appeals said (pp. 203-04) :

"In *Moon*, as here, the twenty year sentence imposed on retrial was the maximum allowed under the statute (Md. Code, 1967 Repl. Vol., Art. 27, Sec. 488). Credit, however, was given Moon for all the time he had served in jail following his arrest. Thus, the case at bar reaches us in a different factual posture than *Moon*, for, by giving no credit for the time Reeves had spent in jail under the first sentence, the lower court, by imposing the maximum sentence in the

second case, in effect, sentenced him to serve twenty-six years in the face of a statute which limits the sentence to twenty years.

"It is true that the Court of Appeals and this Court have reasoned that the granting of a new trial, whether because of a defective indictment or because of error in the first trial results in a *de novo* proceeding, and the lower court, on retrial, 'hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence as if there had been no prior trial.' *Hobbs, supra.* But this theory or fiction does not obliterate the hard fact, present in this case, that if the sentence here imposed is allowed to stand, Reeves could be forced to serve twenty-six years in prison for the commission of a crime which carries with it a maximum sentence of twenty years."

The case was remanded for the imposition of a lawful sentence.

We perceive no present constitutional obstacle to continuing to follow the flat rule laid down in *Hobbs.* The Supreme Court has not disturbed increased sentences on retrial. It did not do so in *Hobbs. See also Stroud v. United States,* 251 U. S. 15, 64 L. Ed. 103 (1919) (in which, on retrial, a death sentence replaced a life sentence given at the first trial); *Robinson v. United States* (6th Cir. 1944), 144 F. 2d 392, *aff'd* 324 U. S. 282, 89 L. Ed. 944 (1945) (a death sentence replaced a life sentence). *See also Green v. United States,* 355 U. S. 184, 194, 2 L. Ed. 2d 199, 208 (1957), Note 15 (in which a jury's finding of second degree murder was held to be an implied acquittal of first degree murder which precluded again putting the accused in jeopardy for first degree murder)—"Stroud * * * is clearly distinguishable"; *Cichos v. Indiana,* 385 U. S. 76, 17 L. Ed. 2d 175 (1966). In *United States v. Tateo,* 377 U. S. 463, 12 L. Ed. 448 (1964), both *Stroud* and *Robinson* are cited as existing and viable authority. The Supreme Court denied certiorari in *Patton,* 390 U. S. 905 (1968), but at 389 U. S. 889 it also denied it in *United States ex rel.*

*Starner v. Russell* (3rd Cir. 1967), 378 F. 2d 808, which had refused to follow *Patton* and had reached an opposite result.

We are unpersuaded that *Patton* is sound. There the Court enacted a flat prophylactic rule which it rationalized as constitutionally required, seemingly because it was convinced that out of bitterness, bias, spite or prejudice state judges on retrial would give increased sentences which bore no proper relation to the fair administration of justice, and that in the rare instances in which this was not so, the second sentences could not be found from the record not to have reflected such prejudice or improper motives. This attitude of knowing judicial pragmatism led to the Procrustean holding, which we think is unwarranted and undesirable in its absolute inflexibility.

No appellate court to our knowledge has followed *Patton* in finding a constitutional necessity for entire inflexibility,[1] although if reliance is put on double jeopardy this result is almost inevitable. *See* Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant,* 74 Yale L. J. 606, 611 (1965); *see also Retrial of the Successful Criminal Appellant: Harsher Punishment and Denial of Credit for Time Served,* 28 Md. L. Rev. 64 (1968).

Various federal courts have rejected the view *Patton* took and have refused to follow its holdings. The Court of Appeals for the Second Circuit dismissed without particular comment as not warranting discussion the points that increasing a sentence on retrial violated the constitutional rights of the accused, under due process, equal protection and double jeopardy. *See United States v. Ellenbogen* (2nd Cir. 1966), 365 F. 2d 982, referred to in *Coke v. United States* (S. D. N. Y. 1968), 280 F. Supp. 97, 102. In *Coke,* Judge Cooper, after a thorough consideration of *Patton* and other federal cases held that, considering the additional unfavorable information which came to light in the presentence report following the third conviction as contrasted with the information appearing in the presentence re-

1. California, Oregon and New Jersey Courts have reached similar conclusions essentially as a matter of procedural fairness under state law. See People v. Henderson (Cal. 1963), 386 P. 2d 677; State v. Turner (Ore. 1967), 429 P. 2d 565; State v. Wolf (N. J. 1966), 216 A. 2d 586.

port after the second conviction for the same crime, and considering lack of intention to punish the prisoner for taking an appeal from the second conviction, imposition of a ten-year sentence following the third conviction as opposed to a six-year sentence following the second conviction did not deprive the prisoner of due process, equal protection, or protection against double jeopardy.

*Patton* relied on *Marano v. United States* (1st Cir. 1967), 374 F. 2d 583-85, in which the Court held that an accused's right of appeal must be "unfettered" and that additional testimony at the retrial adverse to the accused did not justify the increased sentence. Unlike *Patton,* the Court observed that in some circumstances it might not be "inappropriate for the Court to take subsequent events [as disclosed in a new presentence report] into consideration, both good and bad."

In *United States ex rel. Starner v. Russell* (3rd Cir. 1967), 378 F. 2d 808, 810, 811-12, *cert. den.* 389 U. S. 889 (1967), Starner pleaded guilty to eight counts of forgery and received a sentence of two to six years. His conviction was vacated because he had not had a lawyer. On retrial he was convicted of the crimes to which he had pleaded guilty and given three and one-half to seven years, with credit for the time he had served, well within the statutory maximum. After the Pennsylvania County Court and Supreme Court had denied him relief in his habeas corpus action, the federal District Court did so and vacated his conviction, holding the increased sentence to be unconstitutional because the sentencing judge's reasons for imposing it were "insufficient." The Court of Appeals reversed, saying:

> "The trial judge below concluded, 'No prisoner should be punished for obtaining a new trial nor for pleading not guilty.' However, the record does not disclose that he was.
>
> "\* \* \* [To hold that the trial judge will certainly increase the sentence after a new trial] would seem to trespass the integrity of the trial judge who, upon hearing all the evidence, with the whole panorama of defendant's crime laid out before him, conscientiously

passes sentence in accordance therewith, even though here the defendant did not take the stand nor call witnesses on his behalf. The sentence thus imposed by the trial judge cannot, in any sense, be said to be for his appealing, unless we again attribute to him a base motive—penalizing him for his appeal, conduct unworthy of the name of judge—rather than for his weighing and evaluating the measure of defendant's crime and passing sentence thereon, in the light of the wider, factual area encompassed by the trial which, in most instances, is far more revealing than those factual elements taken into consideration in the imposition of sentence upon a plea of guilty. * * *

"* * * Undoubtedly, it would therefore seem to be the rule in the federal system that a trial judge, when a new trial is ordered, may impose a sentence greater than one he had earlier vacated, and that it is unnecessary to articulate the reason for any differentiation in the term of the sentence. Furthermore, it has always been the rule in both the federal and state system that leniency is always extended on pleas of guilty that is not extended when defendants go to trial and the petitioner, having had competent counsel, must have been aware of this situation. Additionally, the fact that the judge, in sentencing the petitioner, adverted to this leniency in pleading guilty, in no wise affected the sentence he imposed.

"It is submitted it would be a flagrant trespass of an independent state judiciary, to question its discretionary judgment, in the imposition of a sentence, where the trial judge, in the possession of all the facts relative thereto, in a proceeding in a Federal court on a writ of habeas corpus—already ruled on by the highest tribunal of the state—would vacate the same, unless it clearly flouted constitutional standards of due process."

*United States v. White* (7th Cir. 1967), 382 F. 2d 445, 448, reached a similar result, saying:

"With respect to the defendant's first argument, we believe that when, as here, it appears in the record that the sentencing judge is not penalizing the defendant for having exercised his right to appeal, the imposition of a greater sentence upon reconviction does not constitute a denial of due process and that such action lies within the discretion of the district judge. Similarly, as to the defendant's double jeopardy argument, we do not believe that the fifth amendment prohibits different punishments upon reconviction for the same crime following a successful appeal when the punishment, whether imposed by the same or a different district judge, results from the judge's exercise of his traditional discretionary function of considering a variety of sentencing factors, many of which have no direct relationship to the crime itself.

"We are fully aware of the recent decisions of other courts, dealing with these and related questions, which have expressed views contrary in many respects to those expressed herein. We think, however, that the pronouncement of a constitutional principle as sweeping and inflexible as that discussed in certain of these decisions and urged here by the defendant should await the considered judgment of the Supreme Court, particularly as that Court may choose to refine or abandon whatever distinctions remain between *Green v. United States* * * * and *Stroud v. United States* * * *."

Other similar holdings and rejections of *Patton* include *United States v. Sanders* (E. D. Cal. 1967), 272 F. Supp. 245; *Rice v. Simpson* (M. D. Ala. 1967), 274 F. Supp. 116; *United States ex rel. Davis v. Brierly* (M. D. Pa. 1967), 274 F. Supp. 1006, 1007—"Patton is not the law in this circuit"; *United States v. Fairhurst* (3rd Cir. 1968), 388 F. 2d 825; *State v. Brown* (N. C. 1967), 156 S. E. 2d 272; *Salisbury v. Grimes* (Ga. 1967), 158 S. E. 2d 412; *State v. Jacques* (Super. Ct. N. J. 1968), 239 A. 2d 252.

If the *Patton* rationale were valid it would be logically difficult if not impossible to justify the validity of the newly en-

acted procedures, recommended after extensive study by an able and experienced committee and approved by the bar, for the review of sentences in criminal cases. See Maryland Rule 762, "Review of Sentence," which was authorized by Ch. 288 of the Laws of 1966. Under the Rule (762 b 3) the convicted man's application for review must contain the statement that he understands his present sentence may be increased by the review panel. Chapter 288, in enacting § 134 of Art. 26 of the Code, provided that the review panel shall have the power to order an increased as well as a decreased sentence.

If we assume that the flat rule of *Hobbs* should be replaced by the rule adopted in the Third Circuit in *Starner,* in the Seventh Circuit in *White,* and in the Second Circuit by Judge Cooper in *Coke,* reflecting, as he saw it, the views of the appellate judges of the Second Circuit, and that we shall hereafter make such a modification in a proper case, we see no reason to disturb the judgment and sentence imposed by Judge Pugh.

*Schowgurow v. State,* 240 Md. 121, held that the provision of Article 36 of the Maryland Declaration of Rights requiring a belief in God as a qualification for service as a grand or petit juror was in violation of the Fourteenth Amendment to the Constitution of the United States and that a jury selected in accordance with Article 36 was improperly constituted. *Schowgurow,* we ordered, was not to apply retroactively except for convictions which had not become final when the opinion was rendered.

*State v. Madison,* 240 Md. 265, held that any accused indicted or convicted by such an improperly constituted jury had the right to have the indictment dismissed or his case retried without showing actual prejudice. *Smith v. State,* 240 Md. 464, held that there could be an intelligent and knowing waiver of the defects in an indictment or conviction by such an improperly constituted jury.

In *Hays and Wainwright v. State,* 240 Md. 482, we ruled that there need have been no challenge or objection below to such a defective indictment in order to take advantage of the constitutional defects.

In this context, this Court then ordered that the docket entries in all criminal cases in which an appeal had been noted

480

but not perfected by the transmission of the record be sent to this Court; we then remanded all such cases and all the criminal appeals that had been pending in this Court, subject to identical orders that in each such case the accused could void the technically invalid indictment or the technically invalid jury verdict, or elect to go forward with the pending appeal as if the indictment or verdict were valid. To accomplish this, the following procedures were ordered:

1. The accused was to be brought into the trial court, with his counsel present, to ascertain whether he "desires to avail himself of the relief afforded by the rulings * * * [of the Court of Appeals in the above cases], or whether * * * [he] elects to waive any objections now available to him [under those decisions] * * *."

2. The accused is to be informed of his right to attack his conviction and of the fact that the court would vacate the indictment or conviction, if he moved them to do so.

3. The accused is to be advised that he is subject to reindictment and retrial, if he elects not to abide by his present status.

4. The accused "should likewise be advised that if he be reconvicted any new sentence to be imposed might be greater or less than the one, or ones, presently against him," within maximum limits.

5. The accused is to be told that he can waive any defects in the grand or petit jury which indicted or convicted him, notwithstanding the unlawful composition of such jury.

6. If the accused elects to accept the indictment or trial jury as valid, the appeal will proceed in the Court of Appeals in the usual way, on the other grounds of error claimed.

In the case before us, as in other similar cases, Moon was given the messages this Court said should be given him. He chose after an appropriate period of deliberation to have his indictment nullified. We think this, on the record, was an intelligent, knowing and formal choice, made with the understanding and agreement that upon reconviction he might receive an increased sentence to which he could not object if it were otherwise in order.

There was no constitutional necessity to make *Schowgurow* retroactive at all. *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882 (1966). Exercising our discretion, we chose to make it retroactive to all whose convictions had not become final. In so doing, we, in effect, attached the condition that under the peculiar and limited circumstances, if an accused accepted the benefits of *Schowgurow's* selective retroactivity, he assumed the risk that his next sentence might be greater than the one he was voiding. The procedure was analogous to that under the new review of sentence law and Rule, and there was present the same express understanding, and at least implied agreement, that an increased sentence might result if the purely technical defect which produced no actual unfairness or prejudice in the conviction complained of was taken advantage of.

There is no indication that Judge Pugh increased Moon's sentence because he had elected to have a new trial or for any other unworthy or improper motive. There is substantial indication that the second sentence reflected the extent to which the facts, revealed at the second trial but not at the first, put Moon in a bad light, and showed him to be a greater threat to society than had first been thought. At the first trial the only conviction was for armed robbery. At the second trial, Moon was convicted of larceny and assault with intent to murder also. There was medical testimony at the second trial, not given at the first, of the shocking physical beating of the victim and its disastrous effects. Judge Pugh could have reimposed the original twelve-year sentence and given additional ten-year consecutive sentences for larceny and assault, or a total of thirty-two years, and Moon would not have had even an ostensible basis to complain. Instead, Judge Pugh chose to give twenty years for armed robbery and to suspend sentence on the other convictions. A sentence of twenty years for armed robbery is not only authorized by statute but is not an unusual, shocking or improperly punitive sentence.

We think there was no constitutional bar to the giving of the increased sentence and that the record supports factually its permissibility and propriety.

The judgment of the Court of Special Appeals is affirmed.

*Judgment affirmed.*